## Case No. 2,877.

In re CLEMENS.

[2 Dill. 533;¹ 9 N. B. R. 57; 21 Pittsb. Leg. J. 30.]

Circuit Court, E. D. Missouri. 1873.

BANKRUPT ACT—SECTION 39 CONSTRUED—ACCOMMODATION INDORSERS.

An accommodation indorser of negotiable paper, whose indorsement is in no way connected

¹ [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

with the business of the indorser, cannot be forced into bankruptcy for suspending and failing to resume payment of such paper. Such paper is not "his commercial paper," within the meaning of the ninth clause of section 39 of the bankrupt act [of 1867 (14 Stat. 536)].

In bankruptcy. This is a petition by John Clemens under section 2 of the bankrupt act, to have reviewed an order of the district court by which his answer to a petition to show cause why he should not be adjudicated a bankrupt, was held insufficient. The material facts are these: Morris Langsdorf filed his petition in the district court of the United States against John Clemens, praying that he might be decreed a bankrupt. The petition alleges that one Christian Staehlin made his note for $3,000, dated St. Louis, February 14, 1873, which was indorsed by respondent and three other persons, which note, before its maturity, came to the hands of the petitioning creditor for value, and that the note was subsequently duly protested for nonpayment. A copy of the note and indorsements is set forth in haec verba in the petition. The petition also alleges that the respondent, Clemens, being a merchant, manufacturer, and trader, being insolvent and in contemplation of bankruptcy, suspended and did not resume payment of his commercial paper within a period of fourteen days.

The answer of the defendant is as follows: "And now comes the respondent, John Clemens, and shows cause why he should not be declared a bankrupt, and states: First. That he indorsed the note described in the petition, and he also indorsed several others also made by Christian Staehlin, for the accommodation of said Staehlin; but the note described in the petition, as well also as the other notes indorsed by this respondent for said Staehlin's accommodation aforesaid, were not, nor was either of them, made or indorsed in the ordinary course or in connection with the business of this respondent. This respondent admits that the note described in the petition, as well as several others indorsed by him for the accommodation of said Staehlin, as aforesaid, became due and remaind unpaid for a period of fourteen days and more before the filing of said petition. Second. This respondent avers that no note or bill made by him has become due and remains unpaid; that the only paper outstanding on which his name appears consists of the note described in the petition, and several other notes made by said Christian Staehlin and indorsed by this respondent for the accommodation of said Staehlin, and that all of said paper so indorsed was not made, indorsed, or given for, or on account of, or in settlement of, any debt or liability of this respondent, and said notes were not, nor was either of them, made or indorsed in the ordinary course of, or in connection with, the business of this respondent. This respondent avers that he is not insolvent, but is fully able to pay

his own debts in full. contracted in and about his own business. Wherefore respondent says he is not, by reason of his said accommodation indorsement aforesaid, subject to the provisions of the act of congress mentioned in the petition." To this answer the petitioning creditor filed his general demurrer which presented the question, whether the note set out in the petition, which was indorsed by the respondent for the accommodation of the maker, is the commercial paper of the respondent in the sense of the bankrupt law. The district court held the answer to be insufficient, and thereupon Clemens filed in the circuit court his petition for a review of that decision. [Case No. 2,878, next following.]

H. N. Hart and Krum & Patrick, for petitioner for review.

A. Binswanger, for petitioning creditor.

DILLON, Circuit Judge. The respondent below, who is here as the petitioner in review, was sought to be thrown into involuntary bankruptcy, under the clause of section 39 of the bankrupt act, which provides that any person "being a bankrupt, broker, merchant, trader, manufacturer, or miner, who has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days, shall be deemed to have committed an act of bankruptcy."

The respondent belonged to one of the enumerated classes, and the act of bankruptcy charged is that he stopped or suspended, and, for the prescribed length of time, failed to resume payment of his commercial paper. He is an accommodation indorser on a note negotiable in form, made by one Staehlin and held for value by the petitioning creditor. It is admitted on the record that the note was indorsed by him solely for the accommodation of Staehlin, and that the note did not originate in the business of the respondent below, and was not indorsed in the course of, or in connection with, his business.

Upon this state of facts. the single point presented by the record is, whether he can be proceeded against in invitum and be adjudicated a bankrupt. And this depends solely upon the question, whether he has failed to meet "his commercial paper." Was the note of Staehlin indorsed by the respondent below the respondent's commercial paper within the meaning of the bankrupt act? This question is not settled by adjudication. There is no such act of bankruptcy in the insolvent laws of Massachusetts, from whence so many provisions of the bankrupt act have been taken. and of course no decisions in that state determining its meaning. Commenting on this clause of the bankrupt act. Mr. Edwin James (James. Bankr. Law, p. 261) says: "This act of bankruptcy is confined exclusively to bankers, merchants, and other traders. It is the first time in legislation here or in England that such an act of bankruptcy has been created. By the English bankruptcy acts, the suspension of payment by a banker, merchant, or trader. of his commercial paper and liabilities, is resolved into an act of bankruptcy by summoning him before the court of bankruptcy, and if the debt or demand be not paid or arranged to the satisfaction of the creditor within a prescribed time. the non-arrangement or non-payment within such prescribed period constitutes an act of bankruptcy."

The question now before me has never been decided by the supreme court, nor, so far as I am advised, by any circuit court of the United States. Mr. District Judge Withey (In re Nickodemus [Case No. 10,254]) and Mr. District Judge Blatchford (Innes v. Carpenter [Id. 7,049]; and see, also, In re McDermott Bolt Co. [Id. 8,750]; In re Lowenstein [Id. 8,574]) have expressed the opinion that the accommodation indorsement of the note of another did not make it, within the meaning of the clause of the act under consideration, the commercial paper of the accommodation indorser. On the other hand, Mr. District Judge Lowell (In re Chandler [Id. 2,591]) and in the case under review Mr. District Judge Treat (In re Clemens [Id. 2,878]) have reached the opposite conclusion.

The question is by no means free from difficulty; and although I distrust my judgment when it differs. upon a question of bankruptcy law, from that of the learned judge whose ruling is under review, yet I have not been able to concur in his conclusion that the present petitioner was, upon the facts admitted by the demurrer, liable to be adjudicated a bankrupt. While I need not deny that the note of Staehlin was commercial paper so far as the maker is concerned, although it does not appear that he belonged to any of the six enumerated classes, yet I do not think it became, by the accommodation indorsement of the respondent below "his (Clemens') commercial paper," so that he would be liable to be declared a bankrupt for failing to pay it for fourteen days.

Giving to the words of the act. "stopping or suspending and not resuming payment of his commercial paper," their natural meaning, it seems to me that they do not refer to the case of accommodation indorsers. If a merchant should indorse negotiable paper owned by him in the course of his own business even to borrow money, and his liability be fixed thereon, it may be admitted that it would or might be an act of bankruptcy not to meet it for the period of fourteen days, for the paper thus indorsed by him would be connected with his business. But where we say a merchant, trader, manufacturer. or other person has suspended payment of his paper. the words do not naturally convey to the mind the idea that reference is made to paper which is his only be-

cause he has indorsed it for the accommodation of another. It is an inapt expression to say that a person has stopped payment of his accommodation paper. Persons do not make a business of indorsing paper for others, and it cannot be that this exceptional class of indorsements was primarily in the contemplation of the law-maker. To make the act embrace accommodation indorsers is not necessary to give it full effect and operation. The non-payment of commercial paper by persons not within the enumerated classes is not an act of bankruptcy though made in connection with their own business. A railroad company cannot be thrown into bankruptcy for failing to pay its notes or bills—even its own notes and bills; but if it commits an act of bankruptcy by fraudulent transfers or preferences, it may be proceeded against in bankruptcy by its creditors.

So on the respondent's indorsement he is liable, and may be sued; and if, in consequence of such a suit, an illegal preference will be obtained, any creditor may, for that reason, force him into bankruptcy. But it is, in my judgment, a misconception of the bankrupt act, to regard it as having been intended to collect debts or to regard a resort to it as among the peculiar privileges which the law throws around commercial paper in the hands of a bona fide holder. The order below sustaining the demurrer to the answer is reversed. Reversed.